# Frey *v.* Gingrich, Appellant.

*Judgment—Opening judgment—Evidence—Findings of fact—Review.*
An order discharging a rule to open a judgment will not be reversed by the appellate court where the judge's findings of fact that alleged payment had not been made, is fully supported by the evidence, and there is no manifest error.

Argued Oct. 22, 1913. Appeal, No. 198, Oct. T., 1913, by defendant, from order of C. P. Franklin Co., Dec. T., 1889, No. 163, discharging rule to open judgment in case of J. F. Frey, to use of Wm. R. Keefer, and Corpus Christi Catholic Church of Chambersburg v. J. E. Gingrich. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Rule to open judgment.

GILLAN, P. J., filed the following opinion:
On November 18, 1889, defendant confessed judgment to Mrs. J. F. Frey to No. 163 of December term, 1889, in the sum of $450. This judgment was given as collateral security for the payment of a promissory note to J. E. Gingrich, R. M. Beck and J. M. McDowell. A scire facias to revive this judgment was issued to No. 131 of December term, 1894; to this the sheriff returned nihil; an alias scire facias was issued to No. 12 of February term, 1895; to this the sheriff returned nihil, and on April 13, 1896, at the instance of plaintiff's

attorney, judgment was entered by default for want of an appearance. On the judgment thus entered to No. 12 of February term, 1895, a scire facias was issued to No. 130 of February term, 1901, to revive and continue the lien of the same. To this scire facias the return was nihil, and an alias scire facias was issued to No. 158 of September term, 1903, and on November 5, 1906, judgment was entered by default for want of an appearance. A scire facias was issued to No. 194 of September term, 1911, to revive the lien of judgment No. 158 of September, 1903. This writ was personally served and on September 19, 1911, an affidavit of defence was filed thereto; this action is still pending. On June 18, 1912, a petition to open judgment No. 12 of February term, 1905, and No. 158, September term, 1903, was presented. After argument this petition was dismissed. On January 5, 1913, a petition was presented asking, first, that a reargument be had on the former petition, and, second, that a rule issue to show cause why judgment No. 163, December term, 1889, 12, February term, 1895 and 158, September term, 1903, should not be opened. This rule was granted, an examiner appointed and testimony taken. We are now to pass upon the testimony and ascertain whether or not it will justify us in making absolute the rule.

The allegation is that the original judgment was paid. If on that testimony submitted to a jury the court would sustain a verdict for the defendant, it would be our duty to open the judgment. On the other hand, if upon a review of all the testimony we would not be justified in sustaining a verdict for the defendant, we should discharge the rule: Jenkintown Nat. Bank's App., 124 Pa. 337; Applebee's App., 126 Pa. 385; Steel Iron Company v. Jacobs, 9 Pa. Superior Ct. 122; Kaier v. O'Brien, 202 Pa. 153.

It would be a vain thing to open the judgment now and then on the trial of the cause direct a verdict. The fact that the alleged payments were made prior

to the last revival cannot operate against the defendant. While the revival of this judgment on two returns of nihil is perfectly regular, yet it was without notice to him, and if the judgment was paid before revival he has a right to show it now.

In considering the question now before us we must consider it in connection with the allegations of the different petitions.

In his first petition he says that "he was under the impression that the original judgment had been fully paid until this scire facias was served upon him." This is the only allegation of payment in that petition. He refers, however, to his affidavit of defense and asks that it be made a part of the petition. When we turn to the affidavit of defense we see the allegation that he turned his house and lot over to W. R. Keefer, Esq., the attorney of Mrs. J. F. Frey, the plaintiff in judgment No. 163 of December term, 1889, to rent and sell the same, and to apply the rents collected and the proceeds of sale to the payment of a mortgage on the property and this judgment; that said W. R. Keefer, Esq., attorney for Mrs. Frey, had entire charge of the property; that the rent, as he understands it, was $10.00 a month; that he sold the property for $1,300; that the house if rented for over three years at $10.00 a month, the same if collected, together with the $1,300, would be about enough to pay the taxes on the same and the full amount of the debt and interest on the liens entered against said property. Besides the rents received there were cash payments at different times to Mrs. Frey, the amount of which he does not know, as she has not furnished him with an account of the same. When we look at the supplemental petition we find the allegation that the defendant, in the month of June, turned over his property to Mrs. J. F. Frey through her attorney, W. R. Keefer, with authority to sell the same and receive the rents and income thereof, and to apply the same to the debt and interest of the judgment, and pay the mortgage and a judg-

ment held by William Bossert; that the said Mrs. J. F. Frey accepted the same on this trust, and that the rental value of the property was $10.00 a month; that in August, 1894, petitioner sold the property for $1,300 and paid the purchase money to Mrs. J. F. Frey and William Bossert; that prior to April 1, 1895, petitioner paid W. R. Keefer, attorney for Mrs. J. F. Frey and William Bossert, upon the same trust as aforesaid the sum of $40.00 and $8.00, and made, executed and delivered to him a promissory note for $60.00, which, on maturity, he paid. Now, when we turn to the evidence of the defendant we find there is not a syllable from which it can be learned that the defendant turned over his property to Mrs. Frey, and that she accepted it on the conditions alleged in said petition. There is no evidence that with the knowledge or consent of Mrs. Frey he turned the property over to W. R. Keefer, her attorney, or that he, as attorney for Mrs. Frey, ever accepted it on the terms and conditions stated. Mrs. Frey and W. R. Keefer are both dead. There is no sufficient evidence from which we can find that W. R. Keefer was the attorney of Mrs. Frey for the purposes alleged in said petition. There is no evidence whatever that Mrs. Frey was ever paid anything by petitioner for or on account of this judgment for which she did not receive proper credit. It must be borne in mind all the time the burden is on the petitioner. It is true that Levi Sheetz paid to W. R. Keefer certain rents for the home which belonged to Gingrich. Mr. Sheetz did not know Mrs. Frey in the transaction. The presumption is that Keefer, in this transaction, was acting for Gingrich, and not for Mrs. Frey. We also have receipts from W. R. Keefer for four months' rent from Ed. V. Frey; but one receipt shows for what property it is, and there it mentions the Gingrich property. He does not sign these receipts as attorney for Mrs. Frey.

Considering the allegations of the petition that the petitioner paid the purchase money on the property

when sold or prior to April 1, 1895, that is, the purchase money derived from the sale, to W. R. Keefer, attorney for Mrs. Frey and William Bossert, we find that on September 18, 1894, McCleary, the purchaser, assumed the payment of the Bossert lien, which then amounted to $1,100. We find on the record that at one time Keefer paid to Bossert interest, $55.00, and he must have paid considerable interest to Mrs. Frey. The judgment of Mrs. Frey bore interest from September 17, 1889; it was revived with interest from April 1, 1896, about five and one-half years, but two years' interest was added to the principal at that revival, so there must have been paid three and one-half years' interest, $27.00 per year, by some one; there is no evidence that Gingrich paid it; it must have been paid out of the rents. There is no evidence at all which would justify us or justify a jury in finding that W. R. Keefer received any moneys for or on account of J. E. Gingrich which he did not properly apply. He doubtless kept books of accounts, these would have been available upon the taking of this testimony for the defendant; he could have had them produced; there is no evidence whatever that any effort was made to obtain them.

We have then the testimony of Mrs. Thomas that she saw Gingrich pay to W. R. Keefer at Steelton, $180 or $200; that Keefer said it was for Mrs. Frey; that Keefer and Gingrich there made a settlement. There is not a word of evidence as to what entered into such settlement. If any calculations were made it is strange that Gingrich is not able to produce them. A very cursory glance at the evidence of Mrs. Thomas will convince anyone that her testimony is not of such a character that it can be relied on. While she says that she was hard of hearing and did not hear all the conversation, it was only after a lengthy examination that she says that she heard Mr. Keefer say the money was for Mrs. Frey, "to settle up for Mrs. Frey." While this testimony is very unsatisfactory, it is significant that

420        FREY *v.* GINGRICH, Appellant.

Opinion of Court below—Opinion of the Court.    [55 Pa. Superior Ct.

no allegation of any such payment is made in the petition. The defendant certainly cannot be excused for not mentioning it there. He says that he paid at one time $40.00; at another time $8.00, and then gave his promissory note for $60.00, which he paid at maturity. He offers no proof of that. If he gave a promissory note for $60.00, and paid it at maturity, where is the note? If he paid to Mrs. Frey money at different times it was his business to keep account of the money which he paid her, and he cannot now be excused because of his allegation that she did not furnish him an account of the moneys which she received. It may be that this defendant has paid money for which he has not been credited; if he did that without taking any receipts for it it is his misfortune. He cannot now, after people are dead, expect a court to relieve him by a mere guess, from the result of his own carelessness. On the whole, the evidence is such that if submitted to a jury we would be compelled to say to the jury that it was not sufficient to find that the original judgment had been paid. Therefore:

Now, June 17, 1913, petition is dismissed and the rule is discharged, and the petitioner directed to pay the costs of this proceeding.

*Error assigned* was the order of the court.

*William S. Hoerner,* with him *John M. McDowell,* for appellant.

*Chas. Walter,* of *Walter & Gillan,* with him *Bonbrake & Zacharias,* for appellees.

Per Curiam, December 8, 1913:

This is an appeal from an order refusing to open a judgment entered upon confession by an attorney and twice revived by scire facias, in each of which instances, judgment was taken on two returns of nihil. Notwith-

standing the earnest argument of appellant's counsel, we are of opinion, that the learned judge proceeded on correct principles of law and equity in passing upon the application, and that his conclusions of fact are so well supported by the evidence that we ought not to disturb them. In view of the clear and satisfactory opinion filed by him, no useful purpose would be subserved by a further discussion by us of the questions of fact and law involved.

The order is affirmed at the costs of the appellant.